1  **MICHELLE BETANCOURT**
   California State Bar No. 215035
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: michelle_betancourt@fd.org

5  Attorneys for Joe Anthony Montero

           UNITED STATES DISTRICT COURT

           SOUTHERN DISTRICT OF CALIFORNIA

              (HONORABLE DANA M. SABRAW)

| UNITED STATES OF AMERICA, | ) | Case No. 08CR0548-DMS |
|---|---|---|
| Plaintiff, | ) | DATE: April 18, 2008 |
| | ) | TIME: 11:00 a.m. |
| v. | ) | |
| | ) | STATEMENT OF FACTS AND |
| JOE ANTHONY MONTERO, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| Defendant. | ) | DEFENDANT'S MOTIONS |
| | ) | |

## I.

## STATEMENT OF FACTS

The following statement of facts is based, in part, on materials received from the government. Mr. Montero does not accept this statement of facts as his own, and reserves the right to take a contrary position at motion hearings and trial. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard.

On February 13, 2008, Agent Ortiz responded to a request from a Chula Vista agent to locate a "load vehicle near Wueste Road and Otay Lakes Park." Although unclear how much later, Agent Ortiz did observe a green MVP on Olympic Parkway, not Wueste Raod. Agent Ortiz, along with other agents of the SIG Squad 3, stopped Mr. Montero and another car, a Ford Thunderbird, as they pulled into a gas station.

Agent Ortiz ordered Mr. Montero out of this car, handcuffed him, frisked him and removed his phone. Mr. Montero was alone in the car. After searching the cell phone, without consent, Agent Ortiz formally arrested Mr. Montero and transported him to the Chula Vista Station.

Mr. Montero was not identified by any material witness as being involved in alien smuggling.

On February 27, 2008, the Government filed a six-count indictment against Mr. Montero, charging, in counts one, three and five, a violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2, and in counts two, four, and six, a violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v) (II).

These motions follow.

## II.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

At this time, Mr. Montero has received 171 pages of discovery and three DVDs. Mr. Montero moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

(1) <u>The Defendant's Statements</u>. The government must disclose to the defendant <u>all</u> copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant, which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal; see id., any response by the defendant to interrogation; the substance of any oral statements, which the government intends to introduce at trial, and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings, which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A)[1]. The Advisory Committee Notes and the 1991 Amendments to Rule 16 make clear that the Government must reveal <u>all</u> the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements. Federal Rule of Criminal Procedure 16 is designed "to protect the defendant's rights to a fair trial." United States v. Rodriguez, 799 F.2d 649 (11th Cir. 1986); see also United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide statements offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious

---

[1] Of course, any of Mr. Montero's statements, which are exculpatory, must be produced, as well. See Brady v. Maryland, 373 U.S. 83 (1963).

detriment to preparing trial and defending against criminal charges). **This request includes, but is not limited to, all recorded conversations.**

(2) <u>Arrest Reports and Notes</u>. The defendant also specifically requests that the government turn over all arrest reports, notes, TECS records, dispatch tapes, audio tapes, and video tapes not already produced that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts, referral slips, or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>. The government must produce arrest reports, investigators' notes, memos from arresting officers, sworn statements, and prosecution reports pertaining to the defendant. *See* Fed. R. Crim. P. 16(a)(1)(B) and (C), 26.2 and 12(I); <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (original notes with suspect or witness must be preserved); <u>see also</u> <u>United States v. Anderson</u>, 813 F.2d 1450, 1458 (9th Cir. 1987) (reaffirming <u>Harris</u>' holding).

(3) <u>Brady Material</u>. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995). Under <u>Brady</u>, <u>Kyles</u> and their progeny, impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the accused. <u>See also</u> <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976). This includes information obtained from other investigations which exculpates Mr. Montero. Moreover, Mr. Montero request all information regarding the immigration status of the material witness; a complete criminal history report of the material witness; and any reports of investigation, prior statements, prior arrest, etc. of the material witness. **This requests includes, but is not limited to, all reports and notes regarding arrests/apprehensions of any and all other motorists that the agents detained in their search for the green MVP.**

(4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The government must also produce this information under <u>Brady v. Maryland</u>. This request includes any cooperation, or attempted cooperation, by the defendant, as well as any information, including that obtained from other investigations or debriefings, that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant

to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) <u>The Defendant's Prior Record</u>. The defendant requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(B).

(6) <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial and the purpose for which introduction is sought. This applies not only to evidence which the government may seek to introduce in its case-in-chief, but also to evidence which the government may use as rebuttal. See <u>United States v. Vega</u>, 188 F.3d 1150 (9th Cir. 1999). The defendant is entitled to "reasonable notice" so as to "reduce surprise," preclude "trial by ambush" and prevent the "possibility of prejudice." <u>Id.</u>; <u>United States v. Perez-Tosta</u>, 36 F.3d 1552, 1560-61 (11th Cir. 1994). Mr. Montero requests such reasonable notice at least two weeks before trial, so as to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(C).

(8) <u>Request for Preservation of Evidence</u>. The defendant specifically requests the preservation of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government, and which relates to the arrest, or the events leading to the arrest, in this case. This request includes, but is not limited to, the results of any fingerprint analysis, the vehicle which the defendant drove, the defendant's personal effects, any effects found within the vehicle, any evidence seized from the defendant, or any third party in relation to this case, and all audio or video recordings of Mr. Montero or any third parties related, directly or indirectly, to this case.

(9) <u>Henthorn Evidence</u>. Mr. Montero requests that the Assistant United States Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present case for impeachment material. <u>Kyles</u>, 514 U.S. at 419; <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991); <u>United States v. Lacy</u>, 896 F. Supp. 982 (N.D. Ca. 1995). At a minimum, the prosecutor has the obligation to inquire of his agents in order to ascertain whether or not evidence relevant to veracity or other impeachment exists.

1  (10) <u>Tangible Objects</u>.  The defendant requests the opportunity to weigh the narcotics, to inspect
2 and copy, as well as test, if necessary, all other documents and tangible objects, including photographs, books,
3 papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the
4 defense, or intended for use in the government's case-in-chief, or were obtained from or belong to the
5 defendant.  Fed. R. Crim. P. 16(a)(1)(C).  Specifically, to the extent they were not already produced, the
6 defendant requests copies of all photographs in the government's possession of the vehicle, the defendants,
7 and any other photos taken in connection with this case.  **Additionally, Mr. Montero moves this Court to**
8 **order the government to allow defense counsel to view, inspect, and copy Mr. Montero's A-file (if one**
9 **exists) and the A-file of the material witnesses.**

10  (11) <u>Expert Witnesses</u>.  The defendant requests the name, qualifications, and a written summary
11 of the testimony of any person that the government intends to call as an expert witness during its case-in-chief.
12 Fed. R. Crim. P. 16(a)(1)(E).  The defense requests that notice of expert testimony be provided at a minimum
13 of three weeks prior to trial, so that the defense can properly prepare to address and respond to this testimony,
14 including obtaining its own expert and/or investigating the opinions and credentials of the government's
15 expert.  The defense also requests a hearing in advance of trial to determine the admissibility of qualifications
16 of any expert.  <u>See</u> <u>Kumho v. Carmichael Tire Co.</u>, 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper"
17 and must determine reliability and relevancy of expert testimony and such determinations may require "special
18 briefing or other proceedings . . ..").

19  (12) <u>Reports of Scientific Tests or Examinations</u>.  Pursuant to Fed. R. Crim. P. 16(a)(1)(F),
20 Mr. Montero requests disclosure and the opportunity to inspect, copy, and photograph the results and reports
21 of all tests, examinations, and experiments conducted upon the evidence in this case, including, but not limited
22 to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody,
23 or control of the government, the existence of which is known, or by the exercise of due diligence may
24 become known, to the attorney for the government, and that are material to the preparation of the defense or
25 are intended for use by the government as evidence in chief at the trial.

26  (13) <u>Evidence of Bias or Motive to Lie</u>.  The defendant requests any evidence that any prospective
27 government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or
28 her testimony.

     (14)    <u>Impeachment Evidence</u>.  The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction, and whether any witness has made a statement favorable to the defendant.  <u>See</u> Fed. R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>.

     (15)    <u>Evidence of Criminal Investigation of Any Government Witness</u>.  The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

     (16)    <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>.  The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

     (17)    <u>Jencks Act Material</u>.  The defendant requests production in advance of trial of all material, including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2.  Advance production will avoid the possibility of delay at the request of the defendant to investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report, or notes, to qualify as a statement under section 3500(e)(1).  <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963); <u>see also</u> <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) (holding that where an agent goes over interview notes with subject interview notes are subject to Jencks Act).

     (18)    <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witness.

     (19)    <u>Agreements Between the Government and Witnesses</u>.  In this case, the defendant requests identification of any cooperating witnesses, who have committed crimes, but were not charged, so that they may testify for the government in this case.  The defendant also requests discovery regarding any express or implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind

of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about, or advice concerning, any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed. **Mr. Montero further requests disclosure of <u>all</u> arrangements/agreements between the material witness and the government.**

Pursuant to <u>United States v. Sudikoff</u>, 36 F.Supp.2d 1196 (C.D. Cal. 1999), the defense requests <u>all</u> statements made, either personally or through counsel, <u>at any time</u>, which relate to the witnesses' statements regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of these witnesses, any agreement sought, bargained for, or requested on the part of the witness at any time.

(20)  <u>Informants and Cooperating Witnesses</u>.  To the extent that there was any informant, or any other tip leading to a TECS hit in this case, the defendant requests disclosure of the names and addresses of all informants, or cooperating witnesses, used, or to be used, in this case, and in particular, disclosure of any informant who was a percipient witness in this case, or otherwise participated in the crime charged against Mr. Montero.  The government must disclose the informant's identity and location, as well as the existence of any other percipient witness, unknown or unknowable, to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957). The government must disclose any information derived from informants, which exculpates, or tends to exculpate, the defendant.

(21)  <u>Bias by Informants or Cooperating Witnesses</u>.  The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. <u>Giglio v. United States</u>. Such information would include what, if any, inducements, favors, payments, or threats were made to the witness to secure cooperation with the authorities.

(22)  <u>Residual Request</u>.  Mr. Montero intends, by this discovery motion, to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Mr. Montero requests that the government provide his attorney with the above-requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

### III.
### MOTION TO RELEASE GRAND JURY TRANSCRIPTS

1    Mr. Montero moves this Court to compel the government to produce all grand jury transcripts in this
2 case. See U.S. CONST. AMENDS V & VI[2]. Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows disclosure
3 "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter
4 that occurred before the grand jury." In this case, release of the grand jury transcripts is appropriate because:
5 one, it is likely that the government misinstructed the grand jury on "bring to" liability in light of United States
6 v. Lopez, 484 F.3d 1186 (9th Cir. 2007) (en banc); and two, it is likely that there will be a fatal variance
7 between the theory of liability presented to the grand jury and the evidence that will be presented before the
8 petit jury.

9    Regarding the first issue, in Lopez, the Ninth Circuit set forth the analytical model to be applied in
10 analyzing whether a defendant acting entirely within the United States may be thought to have aided and
11 abetted another actor in bringing aliens to the United States in violation of 8 U.S.C. § 1324(a)(2), and 18
12 U.S.C. § 2.

> The mere act of picking up aliens at a location near the border and transporting them within the United States is not sufficient to support a conviction for aiding and abetting a 'brings to' offense.

15 Id. at 1199-1200 (footnote omitted).

16    Here, the facts thus far as outlined in the discovery offer a stronger factual scenario than those in
17 Lopez. The government alleges that Mr. Montero *was going to* picked up a group of aliens who had already

---

[2] The Supreme Court has found that "[t]he grand jury is an integral part of our constitutional heritage which was brought to this country with the common law. The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges. 'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.' Costello v. United States, 350 U.S. 359, 362 (1956). Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance. " United States v. Manduano, 425 U.S. 564, 571 (1976). In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges, judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of the government. It is curious why the government, in this district in particular, fights so hard to keep grand jury proceedings sealed. Interestingly, in many cases, the "witness" who "testifies" before the grand jury is a border patrol agent who neither participated in the arrest or the investigation. He is only called to read a report which has been prepared by others. Such a practice does not allow for the considered judgment of grand jurors. Thus, the release of transcripts is appropriate.

been brought to the United States and who were awaiting transportation. Mr. Montero was arrested miles from the group of undocumented persons. There is no evidence of any actual transportation of any sort by Mr. Montero or any connection to the "bring to" offense.

Even if the guide's initial transport conduct were to be considered ongoing in some sense, that need not result in extending "brings to" liability to Mr. Montero's alleged **attempted** transport. Lopez reaffirmed the vitality of the holding in United States v. Vowiell, 869 F.2d 1264 (9th Cir. 1989), that the fact that an escapee's liability was continuing until he was apprehended or surrendered did not mean that the crime of assisting an escape persisted as long, particularly in light of the fact that Congress passed a separate statute that condemned harboring an escapee. See Lopez, 484 F.3d at 1195 (citing Vowiell, 869 F.2d at 1268). In fact, the Supreme Court has recognized that crimes involving unlawful "entry" are not continuing offenses, "as 'entry' is limited to a particular locality and hardly suggests continuity." United States v. Cores, 356 U.S. 405, 408 n.6 (1958). Accord United States v. Rodriguez-Rodriguez, 453 F.3d 458, 460 (7th Cir. July 6, 2006) (following Cores); United States v. Rincon-Jimenez, 595 F.2d 1192, 1194 (9th Cir. 1979).

Thus, in order to ensure that the government did not misinstruct the grand jury, release of the grand jury transcripts is appropriate.

**IV.**

**MOTION TO COMPEL THE GOVERNMENT
TO PROVIDE A BILL OF PARTICULARS**

If this Court denies the above motion to compel the production of grand jury transcripts, then Mr. Montero moves this Court to direct the government to file a bill of particulars. See Fed. Rule Crim. Pro. 7(f). A bill of particulars is warranted where it will enable adequate preparation of the defense and prevent surprise at trial. United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979). A bill of particulars provides a defendant with the details of the charges necessary to present a defense, to avoid prejudicial surprise at trial, and to protect against a second prosecution based on the same facts. See United States v. Cecil, 608 F.2d 1294, 1296 (9th Cir. 1979) (noting also that a bill of particulars ensures that the defendant is tried on the basis of facts presented to a grand jury). Mr. Montero has rights under the Fifth and Sixth Amendments and Fed. R. Crim. P. 7(f) to notice of the charges against him and to a fair trial with an opportunity to defend himself against the charges. In addition, a bill of particulars guarantees a defendant's Fifth Amendment right to be

1 tried on a charge found by a Grand Jury, as a defendant is entitled to know the Government's theory as to a
2 particular count. See <u>Yeargain v. United States</u>, 314 F.2d 881, 882 (9th Cir. 1963). This is true even where
3 the indictment states all the ingredients of the offense. <u>Myers v. United States</u>, 15 F.2d 977, 983 (8th Cir.
4 1926) ("The office of a bill of particulars attaches without distinction, where the indictment states all the
5 ingredients of the offense and further detail may be required or demanded for the protection of the
6 defendant"). See also <u>United States v. Thompson</u>, 189 F. 838, 839 (W.D.Va. 1911) ("An indictment may be
7 so expressed as to be good on demurrer and which still does not give the defendant all the information which
8 he should in fairness have in order to properly prepare for trial, and in such case the defects in the indictment,
9 in Federal practice, may be overcome by a bill of particulars").

10       In this case, Mr. Montero has no idea how the government will attempt to prove the elements of
11 Counts One, Three, and Five, that he "did bring to the United States [the material witnesses] for purposes of
12 commercial advantage and private financial gain...." Nothing in the indictment provides sufficient notice of
13 how Mr. Montero is linked to these counts, and the government has not produced any discovery linking Mr.
14 Montero to the material witnesses' entry. In the absence of a bill of particulars, Mr. Montero is not in a
15 position to adequately prepare to defend this seemingly baseless allegation at trial. Accordingly, Mr. Montero
16 moves this Court to order the government to produce a bill of particulars explaining its theory of liability on
17 these counts.

18 //
19 //
20 //
21 //

22 **V.**

23 **MOTION TO SUPPRESS STATEMENTS**

24       Mr. Montero moves to suppress any statements made at the time of his arrest on the grounds that his
25 <u>Miranda</u> waiver was not knowing, intelligent, and voluntary. Moreover, Mr. Montero moves to suppress **any**
26 **other statements** made on the grounds that those statements were not made voluntarily.

27 **A.**      **The Government Must Demonstrate Compliance with <u>Miranda</u>.**

28

In order for any statements made by Mr. Montero to be admissible against him, the government must demonstrate that they were obtained in compliance with Miranda v. Arizona, 384 U.S. 436 (1966). Specifically, the government must establish that Mr. Montero waived his rights and that any waiver of his Miranda rights was voluntary, knowing, and intelligent. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973). When an interrogation continues without the presence of an attorney, and a statement results, the government has a heavy burden to demonstrate that the defendant has intelligently and voluntarily waived his privilege against self-incrimination. Miranda, 384 U.S. at 475. The court must indulge every reasonable presumption against waiver of fundamental constitutional rights, so the burden on the government is great. United States v. Heldt, 745 F. 2d 1275, 1277 (9th Cir. 1984).

In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality of the circumstances surrounding the case. Edwards v. Arizona, 451 U.S. 477 (1981); United States v. Garibay, 143 F.3d 534 (9th Cir. 1998). The Ninth Circuit has held that determination of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary and (2) knowing and intelligent. Derrick v. Peterson, 924 F. 2d 813 (9th Cir. 1990). The second prong requires an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 820-821 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)). Not only must the waiver be uncoerced, then, it must also involve a "requisite level of comprehension" before a court may conclude that Miranda rights have been legitimately waived. Id. (quoting Colorado v. Spring, 479 U.S. at 573). Unless and until Miranda warnings and a knowing and intelligent waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used against the defendant. Miranda, 384 U.S. at 479. The government in this case must prove that Mr. Montero waived his rights intelligently and voluntarily. Mr. Montero disputes any allegation that his waiver was knowing, intelligent, and voluntarily.

**B.     Mr. Montero's Statements Must Be Voluntary.**

Even if this Court determines that Mr. Montero validly waived his Miranda rights, it must still make a determination that any statements are voluntary. Under 18 U.S.C. § 3501(a), this Court is required to determine, whether any statements made by Mr. Montero are voluntary. In addition, section 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Montero understood the nature of

the charges against him and whether he understood his rights. Without such evidence, this Court cannot adequately consider these statutorily mandated factors.

Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual determination is required, Fed. R. Crim. P. 12 obligates courts to make factual findings. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading. Therefore, prior to admitting any alleged statements from Mr. Montero, a hearing must be held to determine whether the statements were voluntary.

## VI.

### THIS COURT SHOULD SUPPRESS ALL EVIDENCE BECAUSE IT WAS OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT

The agents in this case carried out an illegal stop, an illegal search, and an illegal arrest. They lacked reasonable suspicion to stop Mr. Montero; their sole claim is that Mr. Montero was driving a green MPV. Their warrantless arrest and search are presumptively unreasonable and the government has not shown that they were supported by probable cause. This Court should suppress all evidence (including statements and evidence seized) arising from the illegal stop, arrest and search.[3]

//

//

**A.     Agents Had No Reasonable Suspicion to Stop the Vehicle.**

Agent Ortiz observed a green MVP driving on Olympic Parkway. Agent Ortiz also saw a Ford Thunderbird driving on that same road. Although not anywhere on Wueste Road, Agent Ortiz stopped Mr. Montero and ordered him to open his window and step out of the car.[4] Agent Ortiz immediately handcuffed Mr. Montero, patted him down and "began his investigation." During the patdown, Agent Ortiz found a cell

---

[3] At the very least, this Court should hold an evidentiary hearing to require the Government to prove reasonable suspicion to justify the stop.

[4] Notably, the Thunderbird was also stopped and the driver was ordered to exit his car.

phone and began searching through it, without consent. There was absolutely no reasonable suspicion of Mr. Montero at this point, or any point.

Temporary detention of individuals by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" within the meaning of the Fourth Amendment, and must be supported by at least reasonable suspicion. See Delaware v. Prouse, 440 U.S. 648, 653 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 556 (1976). The vehicle stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. See Terry v. Ohio, 392 U.S. 1 (1968). This is true in the context of roving border patrol stops such as that executed by Agents Vasquez, Diaz, Napoli, and Godreau. United States v. Brignoni-Ponce, 422 U.S. 873 (1975) (roving border patrol agents must have reasonable suspicion, based on specific and articulable facts, in order to initiate a stop).

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002). In the context of investigatory stops, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot...." Id. (internal quotations omitted). To sustain an officer's reasonable suspicion determination, this Court "must look at the 'totality of the circumstances' ... to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Id. Although an officer may rely upon "experience and specialized training to make inferences from and deductions about the cumulative information available" to him before he makes an investigatory stop, "an officer's reliance on a mere hunch is insufficient to justify [such] a stop...." Id., at 273-274 (internal quotations omitted).

**1.     "Mere propinquity" does not establish reasonable suspicion**

To constitute reasonable suspicion, the objective circumstances must demonstrate "a particularized and objective basis for suspecting *the particular person stopped* of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981); see also United States v. Berber-Tinoco, 510 F.3d 1083, 1087 (9th Cir. 2007) (citing Cortez). "Mere propinquity to others independently suspected of criminal activity" is not reason to invade an individual's fundamental Fourth Amendment rights. Ybarra v. Illinois, 444 U.S. 85, 91 (1979).

Ybarra is directly on point here. In Ybarra, agents had a warrant to search a bar and its bartender. Ybarra was a patron of the bar at the time of the search. Because he was in the bar, he was frisked. Heroin

1 was discovered on his person.  Id. at 88-89.  The court found the frisk and subsequent search of Ybarra to be
2 unreasonable, holding that a "person's mere propinquity to others independently suspected of criminal activity
3 does not, without more, give rise to probable cause to search that person."  Id. at 91.  Even though the officers
4 had probable cause (and a warrant) to search the bar and the bartender, this did not provide them even with
5 reasonable suspicion to frisk Ybarra.  Id. at 92.  In short, "mere propinquity" to a person suspected of criminal
6 activity simply does not provide officers authority to disregard the Fourth Amendment's requirement of a
7 particularized and objective basis for suspicion as to *the person* upon whose rights the government intrudes.

8    Ybarra's requirement of more than mere proximity to individuals suspected of criminal activity has
9 been strongly reaffirmed by the Ninth Circuit.  "It is insufficient to point to the defendant's mere proximity
10 to others independently suspected of criminal activity."  United States v. Robertson, 833 F.2d 777, 783 (9th
11 Cir. 1987).  In Robertson the defendant Steeprow was walking out of a house they had reason to believe was
12 a drug house.  She was detained.  However, Steeprow's "mere presence on the premises, without more, cannot
13 support an arrest of her under these circumstances."  The court determined that Steeprow was arrested, not
14 merely detained, but the principle of Ybarra was strongly reaffirmed: mere propinquity—or proximity—to
15 people independently suspected of criminal activity is not suspicious.  Id.

16    **2.    The totality of the circumstances fall far short of the reasonable suspicion standard**

17    Even if the "mere propinquity" to an area in which illegal aliens roam could be *a* factor that can be
18 considered, there was not, under the totality of the circumstances, reasonable suspicion to stop Mr. Montero.
19 The Arvizu case demonstrates how a Border Patrol agent properly formed reasonable suspicion to perform
20 an investigatory vehicle stop.  534 U.S. at 277.  In Arvizu, the agent articulated the following facts:

    1. a magnetic sensor alerted the agent to the presence of a vehicle on an unpaved, seldom traveled road used by smugglers to avoid Border Patrol checkpoints, Arvizu, at 268;
    2. the sensor alert occurred during a change in shifts which would leave the area unpatrolled by the agents, Id.;
    3. the same sensor had detected a minivan using the same route several weeks before which resulted in a marijuana seizure, Id., at 269-270;
    4. a second sensor signal indicated to the agent that the vehicle had turned onto another unpaved road on a route commonly used to circumvent checkpoints, Id., at 270;
    5. when the agent intercepted the vehicle, it turned out to be a minivan, Id.;
    6. when the agent followed the minivan, he noted that the occupants, who appeared to be a family, behaved strangely, first ignoring him and then waving in a mechanical manner, Id., at 270-271;
    7. the agent could see the children's knees, which indicated that their feet rested on some cargo. Id., at 270;

8. the van turned onto a third, even rougher unpaved road, away from any checkpoint, and away from any destination a family might want to reach for recreation, Id., at 271; and
9. a radio check by the agent indicated that the minivan was registered to an address four miles from the international border in a neighborhood notorious for smuggling activity, Id., at 271.

As a result, the agent in Arvizu had reasonable suspicion to perform an investigatory stop of the minivan because he could:

> infer from his observations, his registration check, and his experience that ... [the minivan] had set out ... along a little-traveled route used by smugglers to avoid the ... checkpoint[s] ... at a time when officers would be leaving their ... shifts ... on unpaved and primitive roads.

Arvizu, 534 U.S. at 277.

In this case, however, the facts set forth by the SIG Squad 3 Agents who had an opportunity to view any suspicious activity are as follows:

1. Mr. Montero was driving a green MPV on Olympic Parkway.

As noted above, Mr. Montero's mere proximity to area in which undocumented people roam is not in and of itself suspicious. Ybarra, 444 U.S. at 91. A comparison between the facts of Arvizu and the facts that form the particularized and objective basis for suspecting legal wrongdoing in this case demonstrates that the agents had no reasonable suspicion to stop Mr. Montero. In Arvizu, the agent had nine *independent*, *particularized*, and *objective* facts that gave them particular suspicion *of the individuals in the vehicle*. See supra. Thus, the Supreme Court found that the agent had a reasonable suspicion that the occupants of the van were engaged in criminal activity. In the case at bar the agents can muster *no* independent, objective fact that provides particularized suspicion of Mr. Montero. Cortez, 449 U.S. at 417-18.

The facts indicate that Mr. Montero was stopped because was driving a green car. This provides neither particularized nor an objective basis for suspecting *Mr. Montero* of criminal activity. Id.; Berber-Tinoco, 510 F.3d at 1087. There are no factors listed which—independently or together—would rise to reasonable suspicion to stop a vehicle. As no reasonable suspicion exists, the evidence must be suppressed under the Fourth Amendment.

**B.     The Agents Lacked Probable Cause to Arrest Mr. Montero.**

Where an arrest is effectuated without a warrant, as in this case, it must be supported by probable cause. United States v. Del Vizo, 918 F.2d 821 (9th Cir. 1990). Probable cause exists when an officer has

1  "reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had
2  committed or was committing an offense." United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th
3  Cir. 1988) (citations omitted).

4        If the court disagrees with Mr. Montero contention that the government has failed to show by a
5  preponderance of the evidence that probable cause existed, he respectfully requests that the government prove
6  the reasonableness of the warrantless arrest at an evidentiary hearing at which Mr. Montero can challenge the
7  sufficiency of the government's probable cause.

8  **C.**      **Agents Had No Probable Cause to Search the Phone.**

9        As with the arrest, under the totality of the circumstances, there was insufficient evidence to establish
10 probable cause to conduct a warrantless, nonconsensual search of the phone.  Accordingly, the Court must
11 suppress the evidence seized pursuant to this unlawful search.  The phone was searched without a warrant.
12 That search is therefore presumptively unreasonable. See United States v. Hawkins, 249 F.3d 867, 872 (9th
13 Cir. 2001).  It is the government's burden to demonstrate that its agents complied with the Fourth
14 Amendment. See id.  Here, the agents simply took the phone from Mr. Montero and began looking throught
15 it.  The facts thus far indicated do not amount to probable cause, and thus suppression is warranted.  If the
16 court is disinclined to suppress the fruits of this presumptively unreasonable search, Mr. Montero nevertheless
17 respectfully requests an evidentiary hearing on the issue of probable cause to search the vehicle.

18 //
19 //
20 //

21 **D.**      **All Evidence Seized as a Result of the Unlawful Stop, Unlawful Arrest and Unlawful Search Must Be Suppressed.**
22

23       All evidence seized pursuant to Mr. Montero's unlawful stop, unlawful arrest and unlawful search
24 must be suppressed. See United States v. Patzer, 277 F.3d 1080, 1086 (9th Cir. 2002) (reversing because,
25 since the defendant's arrest was unlawful, "[t]he evidence obtained after his arrest, including his own
26 statements, his passenger's statements, and the physical evidence found during the search of his vehicle, were
27 'fruit of the poisonous tree' and should have been suppressed by the district court"); see also Wong Sun v.
28 United States, 371 U.S. 471 (1963); Taylor v. Alabama, 457 U.S. 687, 694 (1982); Castillo v. De La Renta,

806 F.2d 1071, 1076 (9th Cir. 1989). The suppression of evidence should include, but is not limited to, all tangible evidence and statements. See e.g., Wong Sun, 371 U.S. 47; Taylor v. Alabama, 457 U.S. at 694; Patzer, 277 F.3d at 1080. Therefore, this Court should suppress all evidence related to the invalid arrest and invalid search.

## VII.

## REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

As new information surfaces due to the government providing discovery in response to these motions, or an order of this Court, defense may find it necessary to file further motions, or to supplement existing motions with additional facts. The denial of this motion will result in a violation, at a minimum, of Mr. Montero's Fifth and Sixth Amendment rights. Therefore, defense counsel requests the opportunity to file further motions based upon information gained from discovery.

## VIII.

## CONCLUSION

For the reasons stated above, Mr. Montero moves this Court to grant his motions.

Respectfully submitted,

DATED: April 4, 2007

*/s/ Michelle Betancourt*
**MICHELLE BETANCOURT**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Montero
Michelle_betancourt@fd.org