1  KAREN P. HEWITT
   United States Attorney
2  STEWART M. YOUNG
   Assistant U.S. Attorney
3  California State Bar No. 234889
   United States Attorney's Office
4  Federal Office Building
   880 Front Street, Room 6293
5  San Diego, California  92101-8893
   Telephone: (619) 557-7854/557-6228
6
   Attorneys for Plaintiff
7  UNITED STATES OF AMERICA

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )   CRIMINAL CASE No. 3:07-CR-2526 DMS
                                     )
12                                   )   DATE:        April 18, 2008
                  Plaintiff,         )   TIME:        11:00 A.M.
13                                   )
                                     )   GOVERNMENT'S RESPONSE AND
14       v.                          )   OPPOSITION TO DEFENDANTS' MOTIONS
                                     )
15  JOSE ROSARIO URQUIZA-            )   [34-1] TO COMPEL DISCOVERY AND
    CABRERA (D1), and                )          PRESERVE EVIDENCE;
16                                   )   [34-2] TO RELEASE GRAND JURY
                                     )          TRANSCRIPTS;
17  JOE ANTHONY MONTERO (D2),        )   [34-3] TO COMPEL A BILL OF
                                     )          PARTICULARS;
18                Defendants.        )   [34-4] TO SUPPRESS STATEMENTS;
                                     )   [34-5] TO SUPPRESS EVIDENCE;
19                                   )   [34-6] TO GRANT LEAVE TO FILE FURTHER
                                     )          MOTIONS; AND
20                                   )   [35-3] TO SEVER TRIALS.
                                     )
21  _____)   TOGETHER WITH A STATEMENT OF THE
                                         FACTS AND THE MEMORANDUM OF
22                                       POINTS AND AUTHORITIES, AND
                                         GOVERNMENT'S MOTIONS FOR:
23
                                         (1) RECIPROCAL DISCOVERY
24
25       COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

26  KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney,

27  hereby files its Response and Opposition to Defendant's Motions for Discovery and its Motion for

28  Reciprocal Discovery.  This response and motion is based upon the files and records of the case together

with the attached statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF THE CASE

On February 27, 2008, the Government filed a six-count indictment charging Jose Rosario Urquiza-Cabrera and Joe Anthony Montero (collectively "Defendants") with three counts of violating 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2, bringing an alien into the United States for financial gain and aiding and abetting, and three counts of violating 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(II), transportation of an alien.  On March 4, 2008, Defendants were arraigned on the Indictment and entered a plea of not guilty.

# II

## STATEMENT OF FACTS

On February 13, 2008, Border Patrol agents assigned to the Otay Lakes area were conducting Border Patrol duties.  This area was about five miles north of the U.S./Mexico international boundary and approximately ten miles east of the Otay Mesa, California, Port of Entry.  Around 6:00 a.m. on that day, Border Patrol agents reported a seismic intrusion device alert in the area.  Border Patrol agents responded to the location of that alert and spotted a group of eleven individuals walking towards their location.  The agents approached and identified themselves as Border Patrol agents.  The group immediately began to run to avoid apprehension, and the agents chased after these individuals.

After a brief chase, all eleven individuals were detained and queried as to their immigration status.  All eleven individuals admitted to being Mexican citizens without documentation allowing them to be present legally in the United States.  All eleven were arrested, including one of the co-defendants, Urquiza-Cabrera.  Urquiza-Cabrera was subsequently identified as the foot guide of the group.

Post-arrest, but prior to transporting these individuals to the Border Patrol station for processing, Urquiza-Cabrera's cell phone began to ring.  Border Patrol Agent Bedolla answered the cell phone and communicated with the individual on the other end.  That individual, subsequently identified as co-defendant Montero, asked where Urquiza-Cabrera and the group presently were and described the vehicle he was driving.  Montero stated that he was driving a green Mazda MPV and that he was in the vicinity of Wueste Road.  He stated he had seen marked Border Patrol vehicles in the area and that he

had changed location because of those vehicles.  Agent Bedolla informed Border Patrol agents of this information.

Border Patrol agents in the Smuggling Interdiction Group (SIG) responded to the request to look for a green Mazda MPV in the vicinity of Otay Lakes and Wueste Road.  The SIG agents encountered the MPV matching this description heading westbound on Olympic Parkway, and initiated surveillance on that MPV.  The vehicle made a right turn into a strip mall and then drove towards the Chevron gas station.  At the station, agents approached the MPV with their Border Patrol badges visible and advised the driver to roll down the window.  The driver, later identified as Montero, did not comply.  At that point, BPA Ortiz advised Montero to open the door to the MPV, to which Montero complied.  Montero asked why he was asked to get out of the vehicle, and BPA Ortiz told him to keep his hands in plain view and to exit the vehicle.  BPA Ortiz then placed Montero in handcuffs for officer safety and did a cusory pat down of Montero.  BPA Ortiz discovered a cellular phone on Montero's person and placed the phone on top of the MPV, and then momentarily turned to talk to SIG BPA L. Gutierrez.

At that point, Montero appeared to reach into his back pocket once BPA Ortiz had his back turned.  BPA Ortiz immediately grabbed Montero's hands to restrain his movement, fearing a weapon might be present.  According to BPA Ortiz, Montero appeared to be clutching something in his right hand and resisted BPA Ortiz's orders to release the object.  BPA Ortiz pried open Montero's hands and extracted a cellphone SIM card that Montero was attempting to destroy.  That SIM card came from the previously extracted cellphone in Montero's possession.  Montero appeared to be trying to bend and break the SIM card, but luckily, the SIM card still worked.  Montero was arrested and the phone demonstrated a number of calls to the cellphone in Urquiza-Cabrera's possession.

Post-Miranda, Urquiza-Cabrera elected to speak to agents without an attorney present.  He admitted that he had been previously removed and that he had been previously apprehended for driving an alien smuggling load through a Border Patrol checkpoint.  He indicated that, on that occasion, he was driving the load vehicle in lieu of payment of smuggling fees.  Montero, while being processed, stated that he just wanted to go home and claimed that he had information regarding the alien smuggling organization.  He then made a further unsolicited statement that Border Patrol did not have any evidence against him because he had destroyed the SIM card to the cellphone.  He stated that because he had

destroyed the cell phone, agents could not associate him with this smuggling event.

The material witnesses in this case were interviewed and they stated they, or their friends or family, were to pay between $1,500 to be smuggled into the United States. All of them were able to identify Urquiza-Cabrera as the footguide.

### III

### GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR DISCOVERY

The United States intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal Procedure. Thus far, the United States has produced 40 pages of discovery and five compact discs of statements. Defendants' specific requests are addressed below.

#### (1) The Defendants' Statements

The United States recognizes its obligation under Rule 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendants the substance of Defendants' oral statements and Defendants' written statements. The United States has produced all of Defendants' oral and written statements that are known to the undersigned Assistant U.S. Attorney at this date and all available compact discs. If the United States discovers additional written or oral statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The United States has no objection to the preservation of the handwritten notes taken by any of the United States' agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendants with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The United States is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined under 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or

4

adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms).  The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendants that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to the Defendants.

### (2) Arrest Reports, Notes and Dispatch Tapes

The United States has provided the Defendants with arrest reports.  As noted previously, agent rough notes, if any exist, will be preserved, but they will not be provided as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendants' apprehension, but has requested the Border Patrol to preserve these if they do exist.  If the United States becomes aware of such dispatch tapes, and those tapes fall under Rule 16 discovery obligations, the United States will provide those tapes.

### (3) Brady Material

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment.  Defendants, however, are not entitled to all evidence known or believed to exist which is, or may be, favorable to either of the accused, or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

1    The United States will turn over evidence within its possession which could be used to properly

2    impeach a witness who has been called to testify.

3    Although the United States will provide conviction records, if any, which could be used to

4    impeach a witness, the United States is under no obligation to turn over the criminal records of all

5    witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

6    information, disclosure need only extend to witnesses the United States intends to call in its case-in-

7    chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

8    1305, 1309 (9th Cir. 1979).

9    Finally, the United States will continue to comply with its obligations pursuant to United States

10   v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

11   **(4) Sentencing Information**

12   Defendants claim that the United States must disclose any information affecting Defendant's

13   sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83

14   (1963).  The United States respectfully contends that it has no such disclosure obligation under Brady.

15   The United States is not obligated under Brady to furnish a defendant with information which

16   he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule of

17   disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

18   defendant.  In such case, the United States has not suppressed the evidence and consequently has no

19   Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

20   But even assuming Defendants do not already possess the information about factors which might

21   affect their guideline ranges, the United States would not be required to provide information bearing on

22   Defendants' mitigation of punishment until after Defendants' convictions or pleas of guilty and prior

23   to their sentencing dates.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No

24   [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

25   remains in value.").  Additionally, the United States is unaware of any cooperation, or even attempted

26   cooperation, provided by Defendants.  Accordingly, Defendants' demand for this information is

27   premature.

28

**(5) Defendant's Prior Record**

The United States will provide the Defendants with a copy of their criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

**(6) Proposed 404(b) and 609 Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendants with official notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

**(7) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendants an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendants' defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendants, including photographs. In fact, the United States has already complied by participating in a car viewing with Montero's investigator.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8) Preservation of Evidence**

The United States will preserve all evidence to which Defendants are entitled pursuant to the relevant discovery rules. However, the United States objects to any blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendants an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendants' defenses or intended for use by the United States as evidence in chief at trial, or obtained from or belong to Defendants, including photographs. The United States has made the evidence available to Defendants and their investigators and will comply with any request for inspection.

**(9) Henthorn Evidence**

Again, as stated in Section III(3) of this Response, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(10) Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendants' defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendants.   The United States need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).  The United States

**(11) Expert Witnesses**

The United States will comply with Rule 16(a)(1)(G) and provide Defendants with a written summary of any expert testimony that the United States intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the expert witnesses' qualifications, the expert witnesses opinions and the bases and reasons for those opinions.

**(12) Reports of Scientific Tests or Examination**

The United States will provide the results of any reports of scientific tests or examinations, should any be conducted.  At this time, the United States is aware of no tests or examinations which are material to the preparation of the defense or are intended for use by the United States at trial.

**(13) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendants.  The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(14) Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(15) Criminal Investigation of Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The United States will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.  When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(16) Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(17) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on direct examination, the United States must give the Defendants any "statement" (as defined by the Jencks Act) in its possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act.  United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  While the United States is

only required to produce all Jencks Act material <u>after</u> the witness testifies, the United States plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

Additionally, no witness who testified before the grand jury will testify at trial, so the United States does not anticipate that it will have to provide any of the Grand Jury transcripts to Defendants.

### (18) Giglio Information

As stated previously, the United States will comply with its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

### (19) Agreements Between the Government and Witnesses

The United States is unaware of any agreement between it and any cooperating witnesses, who have committed crimes, but were not charged, so that they may testify for the Government in this case. The United States will comply with all of its obligations under <u>Brady</u>, <u>Giglio</u>, Jencks Act, and Rule 16, regarding any potential cooperating witness, including any of the material witnesses. Again, at this time, the United States is unaware of any agreement between any of these potential witnesses, but will provide any relevant and pertinent information if such an agreement arises**.**

### (20) Informants and Cooperating Witnesses

If the Government determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection. <u>See</u> <u>Roviaro v. United States</u>, 353 U.S. 53, 60-61 (1957); <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1505 (9th Cir. 1997).

The United States has already stated it will comply with its <u>Brady</u>, <u>Giglio</u>, Jencks Act, and further Rule 16 discovery obligations. The United States will comply with the structure of <u>Roviaro</u> if it determines that any confidential informant information is "relevant and helpful to the defense of [the] accused, or is essential to the fair determination of a cause." <u>Roviaro</u>, 353 U.S. at 60.

As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring disclosure of an informant's identity whenever it is relevant or helpful to a defendant's case. <u>See</u> <u>Roviaro v. United States</u>, 353 U.S. at 62. Indeed, as the D.C. Circuit stated in <u>United States v. Skeens</u>, 449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity

of an informant is necessary to his defense." Id. at 1070. "Mere speculation" that an informant's testimony may assist the defendant is not sufficient to meet this burden. United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir.1996). In determining whether the Defendant has met this burden, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," all the while "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62. The United States will comply with its Rovario obligations, but it also requests that any information provided to the Defendants be subject to in camera review by the Court.

**(21) Bias by Informants or Cooperating Witnesses**

As stated in Section III(12), the United States is unaware of any evidence indicating that any prospective witness, whether Government agent, Informant, or Cooperating Witness, is biased or prejudiced against Defendants. The United States is also unaware of any evidence that prospective witnesses, whether Government agent, Informant, or Cooperating Witness, have a motive to falsify or distort testimony. It will comply with its Giglio obligations if it becomes aware of any indication of bias on behalf of any of these witnesses.

**(22) Residual Request**

The United States has already complied with Defendants' request for prompt compliance with its discovery obligations prior to Indictment. The United States will continue to comply with all of its discovery obligations, but objects to the broad nature of Defendant's further discovery requests.

**IV**

**THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO RELEASE THE GRAND JURY TRANSCRIPTS**

The United States submits that release of the grand jury transcripts is not appropriate, despite defendant's argument regarding United States v. Lopez, 484 F.3d 1186 (9th Cir. May 7, 2007) (en banc). Indeed, the United States believes the evidence against Montero on the aiding and abetting liability theory is clear. In this case, unlike Lopez, there is abundant evidence that defendant "aided and abetted the smuggling scheme before the aliens were brought to the United States." Lopez, 484 F.3d at 1200. Montero clearly possessed the cell phone that showed a number of calls between him and the footguide,

1    Urquiza-Cabrera.  Indeed, it is clear that Montero was trusted to show up at the pickup site, especially

2    given that he was in direct contact with footguide.

3        Therefore, viewed in the light most favorable to the United States (or from practically any other

4    point of view), the defendants aided and abetted the smuggling scheme before the crime was complete.

5    Aiding and abetting is not a substantive offense, but rather it is a theory of liability.  See United States

6    v. Ramirez-Martinez, 272 F.3d 903, 911 (9th Cir. 2001).  Accordingly, the Ninth Circuit has found that

7    aiding and abetting is implied in every count of every federal indictment.  United States v. Vaandering,

8    50 F.3d 696, 702 (9th Cir. 1995); United States v. Armstrong, 909 F.2d 1238, 1241 (9th Cir. 1990);

9    United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988);  United States v. Michaels, 796 F.2d 1112

10   (9th Cir. 1986).  Indeed, in Armstrong, the court held that 18 U.S.C. § 2 does not define a substantive

11   offense and does not even need to be alleged in the indictment.

12       Defendant attempts to rely on general statutory construction case law which does not address the

13   issue of aiding and abetting or take into account the broad applications of the aiding and abetting statute.

14   Under 18 U.S.C. § 2, anyone who aids and abets the commission of any crime can be prosecuted for that

15   crime:  "[W]hoever commits an offense against the United States or aids, abets . . . is punishable as a

16   principle."  In other words, 18 U.S.C. § 2 is a rule of inclusion and not exclusion.  Even if the aiding and

17   abetting statutes had not been included in the indictment, the United States would be free to argue an

18   aiding and abetting theory - no matter what the substantive charges.

19       Similarly, aiding and abetting need not be specifically included in the criminal statute's language

20   in order for the government to proceed on that basis.  Once the indictment is returned, Armstrong,

21   Gaskins and Michaels mandate, aiding and abetting is embodied in full for all the charges contained

22   therein.  The Ninth Circuit has affirmed convictions based on an aiding and abetting theory.  In United

23   States v. Barajas-Montiel, 185 F.3d 947 (9th Cir. 1999), for example, the defendant was convicted of

24   six counts of bringing in illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and

25   18 U.S.C. § 2.  Although the legality of the § 2 convictions was not raised, the Court affirmed

26   defendant's convictions.

27       In United States v. Ramirez-Martinez, 272 F.3d 903, 911, the Ninth Circuit affirmed the district

28   court's finding that the count charging the defendant with violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and

1  18 U.S.C. § 2 was not defective.  The appellate court stated that aiding and abetting is not a separate

2  offense and is applicable to the entire criminal code.  See id.; see also United States v. Angwin, 271 F.3d

3  786, 800 (9th Cir. 2001) (affirming district court decision to deny the defendant's motion to dismiss the

4  count charging violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2).  See also United States v.

5  Angwin, 271 F.3d at 800; See also United States v. Barajas-Montiel (affirming defendant's conviction

6  of six counts of bringing-in illegal aliens for financial gain in violation of 8 U.S.C. § 1324 (a)(2)(B)(ii)

7  and 18 U.S.C. § 2).  Second, even assuming the Court finds that the statutes are duplicitous, the Court

8  may instruct the jury particularizing the distinct offense charged in each count of the Indictment.  See

9  Ramirez-Martinez, 272 F.3d at 915.  Thus, the remedy  suggested by Defendant is not the only remedy

10  available.

11        Despite Montero's arguments, Lopez has not radically changed the calculus of the aiding and

12  abetting liability theory to the point of dismissal on this case.  Lopez stands for the proposition that

13  aiding and abetting liability is not automatic, but in this case, the United States has a very strong

14  argument to proceed on aiding and abetting liability.  Montero's possession of the cellphone – in direct

15  contact itself with the footguide bringing people into the United States – should be the death knell of any

16  argument that aiding and abetting does not apply.  The smuggling organization clearly relied on the

17  defendant, especially by giving him a cellphone and the number of the footguide to have direct contact

18  with that footguide.  Any argument that the grand jury transcripts need to be released does not mesh with

19  the information already provided to the defendant, and the United States should have the chance to prove

20  its case on this theory.

21        Therefore, the United States requests that Montero's motion to release the grand jury transcripts

22  should be denied.[1/]

23

24

25

26

27  [1/]Urquiza-Cabrera also apparently joins in this motion as well, which makes absolutely no sense.

28  Urquiza-Cabrera, as the footguide, clearly brought the smuggled aliens into the United States, and therefore is substantively charged with the bringing in for financial gain counts.  He can not demonstrate that the Grand Jury was misinformed on the state of the law for him.

V

## RESPONSE AND OPPOSITION TO DEFENDANT'S

## MOTION FOR A BILL OF PARTICULARS

As stated above, the United States has already demonstrated Montero's liability on the aiding and abetting theory. Montero possessed a cellphone that was in direct contact with the footguide, and Montero also called the footguide's cell phone to direct the footguide to the pickup point. It is a clear theory, and the Government believes that a Bill of Particulars is not warranted in this case. Montero has been provided with the discovery in this case, as well as the Indictment, and clearly understands the charges against him as discussed by his able defense counsel.

VI

## RESPONSE AND OPPOSITION TO DEFENDANT'S

## MOTION TO SUPPRESS STATEMENTS

Montero moves to suppress statements made by them to agents post-arrest and after he indicated that he invoked his rights not to make a statement. These statements were unsolicited comments made by Montero to the agents after they explained his Miranda rights and after he indicated that he did not want to give a statement. Agents did not request any further communication from him regarding the offense, but Montero made these statements unsolicited. Accordingly, no actual argument is made by Montero as to why these statements should, under the facts of this specific case, be suppressed. Furthermore, no required declaration has been filed to support the argument. Montero also requests an evidentiary hearing to establish the facts and to aid the Court in deciding his suppression motion; however, he does not support his request with a declaration. Accordingly, the United States believes that the requirements for such a suppression hearing have not been met. If the Court chooses to hold an evidentiary hearing on Montero's motion at a future date, the United States would prove that Montero's statements were voluntary and are, therefore, admissible.[2]

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal

---

[2]Urquiza-Cabrera states that he joins in Montero's motions to suppress statements. Urquiza-Cabrera also fails to file the required declaration, nor provides any support as to why his Mirandized statements should be suppressed. Accordingly, the United States believes that such a motion should not be entertained, given that Urquiza-Cabrera did not even analyze the facts surrounding his statements in his motion.

14

Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1. The local rule further provides that "the Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."

No rights are infringed by the requirement of such a declaration. Requiring a declaration from a defendant in no way compromises defendant's constitutional rights, as declarations in support of a motion to suppress cannot be used by the United States at trial over a defendant's objection. See Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress ); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to suppress). Moreover, Montero has as much information as the Government in regards to the statements he made. See Batiste, 868 F.2d at 1092. At least in the context of motions to suppress statements, which require police misconduct incurred by Defendant while in custody, Defendant certainly should be able to provide the facts supporting the claim of misconduct. Finally, any objection that 18 U.S.C. § 3501 requires an evidentiary hearing in every case is of no merit. Section 3501 requires only that the Court make a pretrial determination of voluntariness "out of the presence of the jury." Nothing in section 3501 betrays any intent by Congress to alter the longstanding rule vesting the form of proof on matters for the court in the discretion of the court. Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.") (citation and quotation marks omitted).

The Ninth Circuit has expressly stated that a United States proffer based on the statement of facts attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to adduce specific and material facts. See Batiste, 868 F.2d at 1092. Moreover, the Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule. See

1    United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991); United States v. Howell, 231 F.3d 616,

2    620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the

3    moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court

4    to conclude that contested issues of fact exist."); see also United States v. Walczak, 783 F. 2d 852, 857

5    (9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving

6    papers are sufficiently definite, specific, detailed, and nonconjectural to whether contested issues of fact

7    exist). Even if Defendant provides factual allegations, the Court may still deny an evidentiary hearing

8    if the grounds for suppression consist solely of conclusory allegations of illegality. See

9    United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson

10   did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's

11   declaration and points and authorities submitted in support of motion to suppress indicated no contested

12   issues of fact).

13       As Defendant in this case has failed to provide declarations alleging specific and material facts,

14   the Court would be within its discretion to deny Defendant's motion. Indeed, such a denial may properly

15   be made based solely on the statement of facts attached to the complaint in this case, without any further

16   showing by the United States. Moreover, Defendant had an opportunity, in his moving papers, to proffer

17   any facts alleging violations of his rights. Such a discussion of caselaw and conclusory language, absent

18   a discussion of the particular facts of this case, fails to generate a disputed factual issue requiring an

19   evidentiary hearing. See Howell, 231 F.3d at 623.

20   **VII**

21   **THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO**

22   **SUPPRESS EVIDENCE SEIZED IN VIOLATION OF THE FOURTH AMENDMENT**

23       A.    THE MOTION TO SUPPRESS EVIDENCE

24       In his motion, Montero moves this Court for an order suppressing evidence pursuant to the

25   Fourth Amendment. This motion should be denied. Contrary to Montero's contentions, the agents' stop

26   of Montero's vehicle and subsequent search complied with the Fourth Amendment in every respect and

27   any evidence located in that vehicle, specifically, the cell phone linking Montero to the smuggling

28   incident, is admissible against Montero and Urquiza-Cabrera at trial.

(1)     Agents Had Reasonable Suspicion To Stop The Car

Montero contends that any evidence seized from the MPV driven by Montero on February 13, 2008, should be suppressed because agents' stop of his vehicle violated his Fourth Amendment rights. Defendant's argument is unpersuasive. The Fourth Amendment protects individuals from unreasonable searches and seizures by the Government. United States Constitution, Amend. 4. Investigatory stops, in a vehicle or otherwise, are permitted; and the protections of the Fourth Amendment are extended to the investigatory stops. See Terry v. Ohio, 392 U.S. 1, 9 (1968). With respect to vehicles, an officer may stop a motorist where he has a "particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). This "particularized and objective basis," or reasonable suspicion, may be based on the totality of the circumstances – "the whole picture" – surrounding the detention. Id.; see also United States v. Sokolow, 490 U.S. 1, 7 (1989). Reasonable suspicion exists when an officer is aware of specific, articulable facts, which, together with objective and reasonable inferences, form a basis for suspecting that the particular person to be detained has committed or is about to commit a crime. See United States v. Salinas, 940 F.2d 392, 394 (9th Cir. 1991). Reasonable suspicion need not be inconsistent with innocence. "The relevant inquiry is not whether the particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts." Sokolow, 490 U.S. at 10. In addition, an investigatory stop "may be justified on facts that do not amount to the probable cause required for an arrest." United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975).

The seminal case of Brignoni-Ponce, 422 U.S. 873 (1975) is illustrative. In Brignoni-Ponce, the United States Supreme Court recognized the valid public interest in controlling the illegal entry of aliens at the border by stating,

> Because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion. . . . The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.

17

1   Id. at 881-882.  The United States Supreme Court rationalized that "a requirement of reasonable

2   suspicion for stops allows the Government adequate means of guarding the public interest and also

3   protects residents of the border areas from indiscriminate official interference." Id. at 883.

4       In addition to recognizing the public interest in controlling the illegal entry at the border and

5   requiring reasonable suspicion for roving stops by the Border Patrol, the Brignoni-Ponce court held that

6   any number of factors may be taken into account when deciding whether there is reasonable suspicion

7   to stop a car in the border area.   The Brignoni-Ponce Court further outlined a *non-exclusive list* of

8   factors which Border Patrol agents might permissibly take into account in deciding whether reasonable

9   suspicion exists to stop a car.  These non-exclusive factors include: (1) characteristics of the area; (2)

10  proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug

11  smuggling in the area; (5) behavior of the driver, including "obvious attempts to evade officers"; (6)

12  appearance or behavior of the passengers; (7) model and appearance of the vehicle; and 8) officers'

13  experience.  Brignoni-Ponce, 422 U.S. at 884-85.  Under the totality of the circumstances approach,

14  courts should not evaluate reasonable suspicion factors "in isolation from each other...although each of

15  the series of acts [may be] 'perhaps innocent in itself'...taken together, they [may] 'warrant further

16  investigation.'" United States v. Arvizu, 534 U.S. 266, 274 (2002) (quoting Terry v. Ohio, 392 U.S. 1,

17  22 (1968)).  In addition, the detaining officers may "draw on their own experience and specialized

18  training to make inferences from and deductions about the cumulative information available to them that

19  'might well elude an untrained person.'" Arvizu, 534 U.S. at 273.  As the Court noted in Sokolow, the

20  reasonable suspicion analysis is "not readily, or even usefully, reduced into a neat set of legal rules" and

21  like probable cause, takes into account the totality of the circumstances.  See Sokolow, 490 U.S. at 7-8.

22  During review, the court must  interpret the facts present in light of the officer's training and experience

23  to determine if reasonable suspicion is valid.  See Sokolow, 490 U.S. at 8.

24      Evaluating the factors listed above, the agents had reasonable suspicion to execute a stop of the

25  vehicle driven by Defendant.  First, agents were working in an area known to have a high concentration

26  of both alien and drug smuggling, particularly in the Otay Lakes, California, area.  Agents had just

27  intercepted a group of 11 individuals who had crossed the border and heading towards San Diego. Those

28  agents then had the cell phone, which Montero himself called, and Montero told the agents (believing

the agent was the footguide) that Montero was driving a green MPV and that the group should head to the new pickup area chosen by Montero.

Within a quick time period of this call, SIG agents located a green MPV in the area discussed by Montero himself and approached the vehicle. When they approached and advised Montero to roll down the window, Montero failed to comply. They then advised Montero to exit the vehicle, which he did. After a pat-down and handcuffing Montero for officer safety, agents observed Montero after he had taken his cell phone back and as he began to destroy the SIM card of his cell phone.

The experience of the agents is important to consider in this case. First, the area is within one hundred miles of the border and the area is a rural area which has a number of arrests for alien and drug smuggling every year. Second, the agents' experience indicated that this particular area (given its close proximity to the border) was heavily utilized by smugglers. Third, as indicated above, the agents experience, background, and training all indicated the prevalence of drug and alien smuggling in the area where agents were conducting surveillance. The officers' experience was particularly acute in this case.

Even more importantly, Montero himself told the agents to look for his green Mazda MPV. The United States is unaware of a case where the defendant himself tells the agents to look for him, and then when his car is stopped, the evidence is suppressed because of that stop. Montero's argument that the agents lacked reasonable suspicion is somewhat belied by the fact that Montero told the agents to find him (again, thinking that the agent was actually the footguide in this case).

All of the applicable factors outlined by the Court in Brignoni-Ponce support a finding of reasonable suspicion or more in this case. Based on the agents training and experience, they were justified in relying on these factors in stopping Montero, especially given his own statements to the agents over the cell phone, as it was clear that they had reasonable suspicion to believe that criminal activity is taking place. United States v. Sokolow, 490 U.S. 1, 7 (1989).[3] Accordingly, nothing about the stop of Montero violated his Fourth Amendment rights and any evidence seized pursuant to that stop is admissible.

---

[3] While not required, the extensive experience of the agents with respect to pervasive smuggling activity in this area, particularly at a time when the checkpoint was not functioning, combined with their observations relating to Defendant and the vehicle he was driving, would also support a finding of probable cause to stop Defendant's vehicle.

(2)    Agents Search of the Vehicle was Lawful

Once agents stopped the vehicle based on a reasonable suspicion of criminal activity, they needed to derive probable cause, or an exception thereto, in order to search Defendant's vehicle pursuant to the automobile exception to the warrant requirement.  California v. Acevedo, 500 U.S. 565 (1991).  Here agents had probable cause to search Defendant's vehicle, and any articles therein, but also obtained Defendant's consent.  Accordingly, agents search of Defendant's vehicle complied with the Fourth Amendment and Defendant's motion seeking to suppress of the evidence or the fruits of that evidence should be denied.

As indicated above, the Constitution protects individuals from unreasonable searches and seizures.  United States Constitution, Amend. 4.  This protection extends only to areas in which a Defendant retains a subjective expectation of privacy that society would consider reasonable.  See Katz v. United States, 389 U.S. 347 (1967).  Accordingly, "the State's intrusion into a particular area, whether in an automobile or elsewhere, cannot result in a Fourth Amendment violation unless the area is one in which there is a 'constitutionally protected reasonable expectation of privacy'."  New York v. Class, 475 U.S. 106, 112 (1986) (citing Katz, 389 U.S. at 360) (Harlan, J., concurring).  The Court has recognized such an expectation of privacy, albeit a diminished one, in vehicles.  Class, 475 U.S. at 112.

Agents clearly had probable cause to search Defendant's vehicle.  Officers may search a motor vehicle based upon probable cause that the vehicle contains contraband or other evidence of a crime.  California v. Acevedo, 500 U.S. 565 (1991); United States v. Ross, 456 U.S. 798 (1982) (finding that separate containers found within a vehicle may be searched based on probable cause if such containers could contain contraband).  The Supreme Court has held that "probable cause" means "a fair probability that contraband or evidence of a crime will be found" in the area searched.  Sokolow, 490 U.S. at 7.

In this case, the agents did not search Montero's vehicle until after he attempted to destroy the SIM card.  The only evidence the United States will likely seek to use against Montero is the cell phone and SIM card itself, both not in the vehicle anyway.  But, in an abundance of caution the United States believes that agents had enough reasonable suspicion to search the vehicle.

20

(3)    Evidentiary Hearing

The Government leaves to the Court's discretion whether or not an evidentiary hearing would assist the Court in evaluating the issues raised by Montero's motion to suppress.  Should the Court decide to conduct such a hearing, the Government respectfully requests that the Court set a date for such hearing approximately several weeks out from the motion hearing date, or alternatively set it for the date designated for motions *in limine*, as that will give the Government sufficient time to contact and subpoena the witnesses the Court would find helpful.

## VIII

## DEFENDANTS' TRIAL SHOULD NOT BE SEVERED

Rule 8(b) of the Federal Rules of Criminal Procedure specifically provides for the joinder of defendants where they participated in the same series of acts or transactions constituting an offense or group of offenses.  Rule 8(b) provides that:

> The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

"Co-defendants jointly charged are, *prima facie*, to be jointly tried."  United States v. Mariscal, 939 F.2d 884, 885 (9th Cir. 1991), citing United States v. Doe, 665 F.2d 920, 926 (9th Cir. 1980); see also United States v. Silla, 555 F.2d 703, 707 (9th Cir. 1977) ("compelling circumstances" generally required to show necessity of separate trial).

Where, as here, initial joinder is proper, the granting or denial of a motion for severance is governed by Rule 14(a) of the Federal Rules of Criminal Procedure.  Rule 14(a) provides in pertinent part:

> If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires.

Thus, in order to justify a severance under Rule 14, the defendant bears the heavy burden of demonstrating undue prejudice.  See, eg., United States v. Arbelaez, 719 F.2d 1453, 1460 (9th Cir. 1983).  The Supreme Court has held that "when defendants have been properly joined under Rule 8(b), a district court should grant severance under Rule 14(a) only if there is a serious risk that a joint trial would prejudice a specific trial right of one of the defendants or prevent the jury from making a reliable

judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 536 (1993).  For the reasons

outlined below, defendants' motion to sever should be denied.

Defendants have not demonstrated that each defendant will have antagonistic and mutually

exclusive defenses at trial.  Even when co-defendants present antagonistic defenses, such defenses "are

not prejudicial per se."  Id. at 538 (noting that a district court should grant a severance under Rule 14

only if there is a serious risk that a joint trial would compromise a specific right of one of the defendants,

or prevent the jury from making a reliable judgment about guilt or innocence).  The Supreme Court

noted that few courts have reversed convictions for failure to sever on the grounds of antagonistic

defenses.  Id.

To warrant severance on the basis of antagonistic defenses, co-defendants must show that their

defenses are irreconcilable and mutually exclusive.  See United States v. Angwin, 271 F.3d 786, 795-96

(9th Cir. 2001) (rejection of defense argument that ignorance is irreconcilable with a defense based on

a lack of guilty intent such as duress); United States v. Sherlock, 962 F.2d 1349, 1363 (9th Cir. 1992)

(mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating

the other does not generate the kind of prejudice that mandates severance).  Defenses are mutually

exclusive when "acquittal of one co-defendant would necessarily call for the conviction of the other."

United States v. Tootick, 952 F.2d 1078, 1081 (9th Cir. 1991); United States v. Throckmorton, 87 F.3d

1069, 1072 (9th Cir. 1996) (noting that "a defendant must show that the core of the co-defendant's

defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's

theory by the jury precludes acquittal of the defendant").

Under Throckmorton, Defendants' motion to sever should be denied as to antagonistic defenses.

Defendants' argument relies on United States v. Crawford, 541 U.S. 36 (2004).  Indeed, the United

States will seek to sanitize any statements implicating a co-defendant in order to ensure that Crawford

is not violated.  However, the statements are not inextricably intertwined that these statements cannot

be sanitized.  Indeed, the statements of Urquiza-Cabrera, do not even implicate that Montero.  The

United States will endeavor to ensure that any statement demonstrating the knowledge of the co-

defendant will not be put before the jury to demonstrate the guilt of that co-defendant.  The Court has

a number of methods that this can be done, including instructing the jury that any statements made by

the defendant can only be used to demonstrate the guilt of that defendant, to impanel two different juries, or to judiciously sanitize the statements. But a wholesale suppression of such statements should not be warranted, and a severance of the defendants is not warranted in this case either. If the Court deems it necessary to consider severing the trial, the Government would request a further hearing on this matter.

IX

### NO OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

The United States does not object to the granting of leave to allow Defendants to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

X

### MOTION FOR RECIPROCAL DISCOVERY

The United States hereby moves for reciprocal discovery from the Defendants. To date Defendants have not provided any. The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendants permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendants and which Defendants intend to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendants, which Defendants intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants intend to call as a witness. Because the United States will comply with Defendants' request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendants. This rule thus provides for the

23

1    reciprocal production of <u>Jencks</u> statements.  The time frame established by the rule requires the

2    statement to be provided after the witness has testified.  To expedite trial proceedings, the United States

3    hereby requests that Defendants be ordered to supply all prior statements of defense witnesses by a

4    reasonable date before trial to be set by the Court.  Such an order should include any form in which these

5    statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes

6    and/or reports.

7                                           **XI**

8                                    **<u>CONCLUSION</u>**

9         For the above stated reasons, the United States respectfully submits its Response and Opposition

10   to Defendant's Motions for Discovery, and requests that its Motion for Reciprocal Discovery be granted.

11        DATED: April 15, 2008.

12                                           Respectfully Submitted,

13                                           KAREN P. HEWITT
                                            United States Attorney
14

15                                           *s/Stewart M. Young*
16                                           STEWART M. YOUNG
                                            Assistant U.S. Attorney
17                                           Email: stewart.young@usdoj.gov

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 3:08-CR-548 DMS |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CERTIFICATE OF SERVICE |
| ) | |
| ) | |
| JOSE ROSARIO ) | |
| URQUIZA-CABRERA (D1), and ) | |
| JOE ANTHONY MONTERO (D2), ) | |
| ) | |
| Defendants. ) | |
| ) | |

IT IS HEREBY CERTIFIED THAT:

     I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action. I have caused service of the United States' Response and Opposition to Defendants' Motions and Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     1. Michael Burke, Esq.

     2. Michelle Betancourt, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 15, 2008.

          s/ *Stewart M. Young*
          Stewart M. Young

08-CR-548 DMS